1

2

3

4

5

6

7

8

9

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

10   FELIPE GARCIA,                                Case No. 1:13-cv-00599-LJO-SKO (PC)

11            Plaintiff,                           FINDINGS AND RECOMMENDATIONS
                                                   RECOMMENDING ACTION PROCEED
12       v.                                        AGAINST DEFENDANTS HERNANDEZ,
                                                   MOSQUEDA, AND BAKER ON FIRST
13   M. BITER, et al.,                             AND EIGHTH AMENDMENT CLAIMS,
                                                   AND OTHER CLAIMS AND DEFENDANTS
14            Defendants.                          BE DISMISSED

15                                                 (Doc. 21)

16   _____/            THIRTY-DAY OBJECTION DEADLINE

17

18   **I.    Screening Requirement and Standard**

19          Plaintiff Felipe Garcia, a state prisoner proceeding pro se and in forma pauperis, filed this

20   civil rights action pursuant to 42 U.S.C. § 1983 on April 25, 2013.  Plaintiff filed an amended

21   complaint as a matter of right on October 11, 2013, and the Court granted Plaintiff's motion for

22   leave to file his proposed second amended complaint on January 13, 2014.  Fed. R. Civ. P. 15(a).

23   On April 24, 2014, the Court found Plaintiff's First and Eighth Amendment claims against

24   Defendant Hernandez cognizable and ordered him to either file a third amended complaint curing

25   the deficiencies in his other claims or notify the Court of his willingness to proceed only on his

26   cognizable claims against Hernandez.  28 U.S.C. § 1915A.  On May 7, 2014, Plaintiff filed a third

27   amended complaint.

28

1    The Court is required to screen complaints brought by prisoners seeking relief against a

2   governmental entity or an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).

3   The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are

4   legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that

5   seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),

6   (2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court

7   shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to

8   state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

9    A complaint must contain "a short and plain statement of the claim showing that the

10   pleader is entitled to relief. . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not

11   required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

12   conclusory statements, do not suffice," *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937

13   (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)), and

14   courts "are not required to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572

15   F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  While factual

16   allegations are accepted as true, legal conclusions are not.  *Iqbal*, 556 U.S. at 678.

17    Under section 1983, Plaintiff must demonstrate that each defendant personally participated

18   in the deprivation of his rights.  *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).  This

19   requires the presentation of factual allegations sufficient to state a plausible claim for relief.  *Iqbal*,

20   556 U.S. at 678-79; *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).  Prisoners

21   proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and

22   to have any doubt resolved in their favor, *Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir.

23   2013); *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010), but nevertheless, the mere possibility of

24   misconduct falls short of meeting the plausibility standard, *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d

25   at 969.

26   ///

27   ///

28   ///

1    **III.**    <u>Discussion</u>

2          **A.**    <u>Summary of Third Amended Complaint</u>

3          Plaintiff brings this action against Warden Martin Biter; Correctional Officers R.

4 Hernandez, Baker, and J. Mosqueda; and Staff Psychologist Nina Hudspeth for violating his rights

5 under the First, Eighth, and Fourteenth Amendments of the United States Constitution and under

6 42 § 1985(3) while he was at Kern Valley State Prison ("KVSP"). Plaintiff's claims arise from

7 events which occurred between June 2012 and January 2013, and he is seeking monetary damages

8 and declaratory relief.

9          On June 12, 2012, Plaintiff returned to KVSP following court proceedings in San Diego,

10 and he, along with several other inmates, was escorted to administrative segregation ("ad-seg").

11 Plaintiff is a level IV inmate and he was housed with inmate Jaco, a level III inmate, and he

12 alleges Defendant Baker ignored their incompatibility.

13          On June 21, 2012, Defendant Hernandez escorted Plaintiff to an institutional classification

14 committee hearing, during which Associate Warden Pfeiffer informed the committee members

15 that Plaintiff was returning to CCI after being "out to court" for a lawsuit against peace officers.

16 Pfeiffer ordered that Plaintiff remain in ad-seg without a rules violation against him, using the

17 "excuse" that there was no bed space. (3rd Amend. Comp., ¶17.) When they exited the hearing

18 room, Defendant Hernandez, who was present during the committee meeting, said loudly in front

19 of Defendant Mosqueda, Officer Villegas, and several waiting inmates,, "We got us a hot one!"

20 (*Id*.) Plaintiff alleges that in prison, "hot one" means a prisoner with issues such as staff assaults,

21 snitching, and/or sex offenses. (*Id.*)

22          On June 25, 2012, Officer Huff searched and inventoried Plaintiff's and Jaco's property,

23 found no contraband, and issued them several personal items allowable in ad-seg. Defendant

24 Hernandez subsequently escorted Plaintiff to a safety cell, where Plaintiff was given the

25 opportunity to retrieve from his three boxes of property the legal material relating to his habeas

26 petition and civil appeal. Defendant Hernandez took the legal material for a contraband search.

27 During the search, Defendant Hernandez spotted and read a section 1983 case filed by a sex

28

offender against the San Diego County Jail, *Munoz v. Kolender*.[1]   Plaintiff alleges the case included a description of "graphic and nefarious acts by Munoz," and Defendant Hernandez later conspired with Defendant Mosqueda, Defendant Baker, and inmates Escalante and Allen to spread false rumors about Plaintiff's association with and/or conviction relating to the *Munoz* case, in an attempt to have Plaintiff stabbed or otherwise assaulted.  (*Id.*, ¶¶19, 20.)

In July 2012, Defendant Hernandez escorted Plaintiff to the law library for his two-hour time allotment.  All inmates are escorted with restraints and law library time occurs inside a small metal cage.  After Plaintiff's time was up, Defendant Hernandez asked him to sign a log book and then opened the cage door without handcuffing Plaintiff.  Plaintiff stayed in the cage and informed Defendant he had not been handcuffed.  Plaintiff alleges Defendant Hernandez said brusquely, "I could have set you up and said you attacked me."  (*Id.*, ¶21.)  When Plaintiff returned to his cell, he told his cellmate, Jaco, about the incident.

Plaintiff alleges that between June 21, 2012, and August 29, 2012, he remained in ad-seg, purportedly because of lack of bed space in the two SNYs (sensitive needs yards).  Plaintiff alleges that Defendants Mosqueda, Baker, and Hernandez would comment to Plaintiff that jailhouse lawyers had nothing coming and to stop filing legal papers.

Plaintiff had accumulated approximately thirty-five pounds of legal papers, which he would wrap in a sheet and use as a work-out weight.  Plaintiff alleges that inmate Escalante would borrow to the work-out weight and Plaintiff believes it was during this time Escalante retrieved Plaintiff's copy of *Munoz v. Kolender*.  Inmate Escalante told the other inmates that the rumors being spread by Defendants Mosqueda, Baker, and Hernandez were true and he had the paperwork to prove it, which caused Plaintiff to be subjected to continuous threats and retaliation.

On one of their yard days, inmate Jaco began acting strangely and hinted Plaintiff should not return to any of the SNY yards but would not say why.  Once they were inside their individual exercise cage, inmate Jaco became really nervous and kept looking at inmate Escalante's cellmate.  While they were doing pushups, inmate Jaco kept reaching for his waistband.  Plaintiff felt

---

[1] The Court takes judicial notice of *Munoz v. Kolender*, 208 F.Supp.2d 1125, 1128 (S.D. Cal. 2002), a civil rights case brought by a civil detainee who had been found to be a sexually violent predator.

something was not right and ceased working out.  Plaintiff asked Jaco what was wrong but Jaco kept looking around and said "nothing" in a low voice.  (*Id.*, ¶24.)

The next day during yard, inmate Jaco stayed in their cell.  When Plaintiff returned, his cellmate was gone and he found a note from Jaco saying, "I'm sorry.  They wanted me to slice you, and I have a family and want to go home.  I still don't know why."  (*Id.*, ¶25.)

Plaintiff alleges that he had been "out to court" in San Diego regarding an excessive force case and he was diagnosed with post-traumatic stress disorder ("PTSD") as a result of the incident.  (*Id.*, ¶26.)  Plaintiff alleges he had to relive the experience in court while watching a videotape of the beating in the presence of the officers, defenseless in handcuffs and leg restraints.  Plaintiff alleges his PTSD was triggered by the court proceedings, and it was aggravated by the constant verbal threats and his cellmate's actions and note.  Plaintiff alleges that he thought the retaliation was occurring because he filed a timely appeal in his court case, and he wrote a letter to the judge informing her of the retaliation and requesting dismissal of his appeal.

On August 20, 2012, Plaintiff submitted a written request for mental health care, and on August 21, 2012, Plaintiff was interviewed by Defendant Hudspeth, a staff psychologist.  Plaintiff alleges that he told Defendant Hudspeth he was being targeted by prison guards in retaliation against him for filing lawsuits and complaints, his life was in immediate danger due to the rumors being spread, and a hit had been placed on his life gang members.  Plaintiff alleges that due to lack of privacy, he did not disclose the accusations against him or the existence of the *Kolender* case.

Plaintiff alleges that Defendant Hudspeth excused herself and went into a room where Defendants Hernandez and Mosqueda were present with other officers.  After Defendant Hudspeth returned, she informed Plaintiff she was denying his request for mental health treatment.  Plaintiff became frustrated and said he was suffering from PTSD from an assault by 10 deputies in 2006 while he was handcuffed; he had to relive those events during trial in his civil case; and he became a sensitive needs yard inmate, discontinued his gang activity, educated himself, stayed free of discipline for two years, and was awaiting a custody reduction which might allow him to have family visits.  Plaintiff said that because of the rumors, he was being placed in a position where if attacked, he would defend himself and if they used a weapon, he knew how to take it away and

1   use it.  Defendant Hudspeth denied his request for help, told him to put in another request the next
2   week, and left, reentering the room where the officers were gathered.  Plaintiff alleges that in
3   denying his request for mental health care, Defendant Hudspeth acted with deliberate indifference
4   to his mental health and risk for suicide.

5          Approximately twenty minutes after Plaintiff was returned to his cell, he was restrained
6   and escorted to Sergeant Morales' office.  Sergeant Morales told Plaintiff that they searched his
7   cell while he was talking to Defendant Hudspeth because Hudspeth thought Plaintiff had a weapon
8   and was reluctant to return to the sensitive needs yards.  Plaintiff was distrustful, but he took a
9   chance and told Sergeant Morales that Officer Villegas and Defendants Baker, Hernandez, and
10  Mosqueda had conspired to spread rumors that he had been convicted of a sex crime.  Plaintiff
11  asked Sergeant Morales to check his computer to verify that Plaintiff had not been convicted of
12  any sex crimes, and he explained that Defendants Mosqueda and Baker told the sensitive needs
13  yard gang members that Plaintiff had some kind of "foul" charges and Defendant Hernandez "had
14  read the paperwork," which Plaintiff believes was the *Munoz* case.  (*Id.*, ¶34.)  Sergeant Morales
15  said, "Look, Garcia, I cannot hold you in ad-seg.  Give me something."  (*Id.*)

16         On August 28, 2012, Officer Perez served Plaintiff with a rules violation report for
17  possession of a weapon which was authored by Defendant Hernandez.  Plaintiff postponed the
18  hearing pending referral to the District Attorney.

19         That night, Plaintiff told Defendant Baker he was homicidal.  Defendant Baker continued
20  passing out dinner trays and he stopped in front of calls 126 and 127, telling the inmates inside,
21  both of whom were gang members, "The weirdo is leaving."  (*Id.*, ¶35.)  Plaintiff alleges that in
22  prison, "weirdo" means crazy, unstable, and/or sex offender rapist.

23         Plaintiff was placed in a holding cell, and he could hear the chatter begin, which included
24  the comments, "he must of [sic] felt it," "he got away again," and "we'll get him."  (*Id.*, ¶36.)
25  Plaintiff's neighbor was also asked, "What did you tell him?"  (*Id.*)  Plaintiff then knew something
26  was up and it was not just his imagination.

27         Plaintiff was kept overnight in the CTC (Correctional Treatment Center) and the next
28  morning, he was escorted back to ad-seg to pick up his property.  Sergeant Morales and Defendant

Hernandez were loading Plaintiff's property on a cart. Plaintiff saw his three boxes but did not see his new television. Plaintiff informed Sergeant Morales and Defendant Hernandez that his television was missing and they reentered the property room. After about five minutes, Defendant Hernandez told Plaintiff he would look for it and send it to Plaintiff later. However, Plaintiff still never received his personal television.

After loading his property into a golf cart, Officer Perez and Defendant Mosqueda drove Plaintiff to ad-seg. Defendant Mosqueda escorted him inside and said in a loud voice within earshot of other inmates, "That's what happens to people like you." (*Id.*, ¶38.) Plaintiff asked him what he was talking about and said he had not done anything. Defendant Mosqueda said these investigations take time and "they'll get you." (*Id.*) Plaintiff then knew Defendant Mosqueda was part of campaign of harassment.

Plaintiff continued to suffer from PTSD and on August 30, 2012, he was taken down from a hanging noose by Officer Perez. Plaintiff was transported to Delano Regional Hospital for a neck injury and suicidal ideation.

On September 11, 2012, Plaintiff filed an inmate appeal and staff complaints regarding the harassment and actions of Defendants Hernandez, Baker, Villegas, and Mosqueda, but he has received no response.

On the same day, Plaintiff informed Associate Warden Pfeiffer during a classification committee meeting of the ongoing harassment, and Pfeiffer suggested Plaintiff file an inmate appeal.

On November 6, 2012, Plaintiff informed Defendant Biter during a classification committee meeting of the harassment and Biter told him to file an inmate appeal. Plaintiff told Defendant Biter he did and Biter said, "Well, you think you're a lawyer; you should know," which got a laugh from the other committee members. Plaintiff tried to explain that he had not received a response and Defendant Biter said, "That's it," and had Plaintiff escorted out.

On December 13, 2012, Plaintiff again appeared before Defendant Biter for a committee meeting. Defendant Biter said they were just there to correct a 128 C 3 and a 128 MH 11, and he did not want to hear Plaintiff's complaints about his officers.

1    Plaintiff was subsequently housed in the CTC for five days and then taken to another yard.

2    Plaintiff began receiving treatment for PTSD, and he endured comments and looks from officers

3    and inmates until he was transferred to another prison on January 11, 2013.

4    **B.    Claims**

5    **1.    Allegations in Paragraphs 10 Through 13**

6    As an initial matter, Plaintiff added to his third amended complaint sweeping allegations

7    regarding system-wide, multi-prison corruption involving harassment, use of force, and retaliation;

8    and allegations regarding the California Department of Corrections and Rehabilitation's

9    ("CDCR's") racially discriminatory hiring policy.  These conclusory, broad allegations fail to

10   support any viable claims for relief under section 1983; they violate the screening order, which

11   informed Plaintiff he may not add new, unrelated in his third amended complaint; they violate

12   joinder rules prohibiting unrelated claims against unrelated parties; and Plaintiff lacks standing to

13   challenge CDCR's hiring policies.  Fed. R. Civ. P. 18, 20, 21; *e.g.*, *Hollingsworth v. Perry*, __

14   U.S. __, __, 113 S.Ct. 2652, 2661-63 (2013) (discussing Article III standing requirements); *Lujan*

15   *v. Defenders of Wildlife*, 504 U.S. 555, 559-61, 112 S.Ct. 2130 (1992); *Blaisdell*, 729 F.3d at

16   1244; *McCollum v. California Department of Corrections and Rehabilitation*, 647 F.3d 870, 882

17   (9th Cir. 2011).  Accordingly, the Court recommends the claims Plaintiff attempts to assert in

18   paragraphs 10 through 13 be dismissed, with prejudice, for failure to state a claim.

19   **2.    First Amendment Retaliation Claims**

20   Allegations of retaliation against a prisoner's First Amendment rights to speech or to

21   petition the government may support a section 1983 claim.  *Silva v. Di Vittorio*, 658 F.3d 1090,

22   1104 (9th Cir. 2011); *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham*

23   *v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995).

24   "Within the prison context, a viable claim of First Amendment retaliation entails five basic

25   elements: (1) An assertion that a state actor took some adverse action against an inmate (2)

26   because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

27   exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate

28   correctional goal."  *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *accord Watison v.*

8

1   *Carter*, 668 F.3d 1108, 1114-15 (9th Cir. 2012); *Silva*, 658 at 1104; *Brodheim v. Cry*, 584 F.3d

2   1262, 1269 (9th Cir. 2009).

3       Given the leniency to which Plaintiff is entitled at the pleading stage, Plaintiff's allegations

4   suffice to support a claim that Defendants Hernandez, Mosqueda, and Baker spread rumors about

5   him after Hernandez learned Plaintiff had returned from litigating a case against officers in San

6   Diego and found a civil rights case filed by a sexually violent predator in Plaintiff's legal

7   material.[2]  *E.g.*, *Blaisdell*, 729 F.3d at 1241; *Wilhelm*, 680 F.3d at 1123.  However, there are no

8   facts alleged which support a claim that Defendants Hudspeth and Biter retaliated against Plaintiff

9   for engaging in protected First Amendment conduct, and Defendant Biter may not be held liable

10  for the conduct of his subordinate employees simply because he is the warden.  *Crowley v.*

11  *Bannister*, 734 F.3d 967, 977 (9th Cir. 2013); *accord Lemire v. California Dep't of Corr. and*

12  *Rehab.*, 726 F.3d 1062, 1074-75 (9th Cir. 2013); *Lacey v. Maricopa County*, 693 F.3d 896, 915-16

13  (9th Cir. 2012) (en banc).

14          **3.      Eighth Amendment Claims**

15      The Eighth Amendment's prohibition against cruel and unusual punishment protects

16  prisoners not only from inhumane methods of punishment but also from inhumane conditions of

17  confinement.  *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing *Farmer v.*

18  *Brennan*, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994) and *Rhodes v. Chapman*, 452 U.S. 337, 347,

19  101 S.Ct. 2392 (1981)) (quotation marks omitted).  While conditions of confinement may be, and

20  often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of

21  pain.  *Morgan*, 465 F.3d at 1045 (citing *Rhodes*, 452 U.S. at 347) (quotation marks omitted).

22

23

---

24  [2] As set forth in the first screening order, the exhibits attached to Plaintiff's second amended complaint demonstrate that he is barred from litigating a claim that he was falsely accused by Defendant Hernandez of possessing a deadly

25  weapon, resulting in the issuance of the rules violation report.  (2nd Amend. Comp., p. 35.)  "[A] state prisoner's § 1983 action is barred (absent prior invalidation) - no matter the relief sought (damages or equitable relief), no matter

26  the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) - *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration," *Wilkinson v. Dotson*, 544 U.S. 74,

27  81-2, 125 S.Ct. 1242, 1248 (2005), and Plaintiff was found guilty of the rules violation he was charged with, resulting in a loss of time credits affecting the length of his sentence.  (2nd Amend. Comp., p. 35.)  Thus, that allegation does

28  not form part of Plaintiff's viable retaliation claim.

1    Prison officials have a duty to ensure that prisoners are provided adequate shelter, food,

2  clothing, sanitation, medical care, and personal safety, *Johnson v. Lewis*, 217 F.3d 726, 731 (9th

3  Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains

4  while in prison represents a constitutional violation, *Morgan*, 465 F.3d at 1045 (quotation marks

5  omitted).  To maintain an Eighth Amendment claim, inmates must show deliberate indifference to

6  a substantial risk of harm to their health or safety.  *E.g.*, *Farmer*, 511 U.S. at 847; *Thomas v.*

7  *Ponder*, 611 F.3d 1144, 1151-52 (9th Cir. 2010); *Foster v. Runnels*, 554 F.3d 807, 812-14 (9th

8  Cir. 2009); *Morgan*, 465 F.3d at 1045; *Johnson*, 217 F.3d at 731; *Frost v. Agnos*, 152 F.3d 1124,

9  1128 (9th Cir. 1998).

10    Plaintiff's allegations are sufficient to state a claim against Defendants Hernandez,

11  Mosqueda, and Baker for spreading rumors about him which endangered his safety around other

12  inmates on the sensitive needs yard.  *Farmer*, 511 U.S. at 833; *Hearns v. Terhune*, 413 F.3d 1036,

13  1040 (9th Cir. 2005).  However, Plaintiff's allegations do not support his claim that Defendant

14  Hudspeth was deliberately indifferent to his mental health needs or that Defendant Biter was

15  deliberately indifferent to his safety.  Vague and/or conclusory allegations do not suffice to

16  support a claim that a prison official knowingly disregarded a substantial risk of harm to an

17  inmate's health or safety, *Blantz v. California Dep't of Corr. and Rehab.*, 727 F.3d 917, 926-27

18  (9th Cir. 2013), and the mere allegation that Defendant Hudspeth denied Plaintiff's request for

19  mental health treatment does not provide a basis for a claim under section 1983, *Snow v.*

20  *McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012), *overruled in part on other grounds*, *Peralta v.*

21  *Dillard*, 744 F.3d 1076, 1082-83 (9th Cir. 2014); *Wilhelm v. Rotman*, 680 F.3d 1113, 1122-23 (9th

22  Cir. 2012).   At best, Plaintiff's allegations indicate a mere disagreement with Defendant

23  Hudspeth's opinion that he was not then in need of mental health treatment.  Even if Defendant

24  Hudspeth was incorrect in her assessment and/or was not as sensitive to his situation as she could

25  or should have been, no claim lies.  *Snow*, 681 F.3d at 985; *Wilhelm*, 680 F.3d at 1122.

26    Likewise, Defendant Biter's disinterest in hearing Plaintiff's after-the-fact complaints

27  about his officers does not provide a basis for liability, as there are no facts demonstrating that

28  Biter knew of and disregarded a substantial risk of harm to Plaintiff's safety.  Plaintiff's factual

allegations were substantially similar between his second and third amended complaints, and at most, his present allegations suggest that Defendant Biter, months after the events which give rise to Plaintiff's claim against Defendants Hernandez, Mosqueda, and Baker occurred, made a snide comment about his jailhouse lawyering and was not interested in hearing Plaintiff's verbal complaints about the officers' behavior.

Accordingly, the Court recommends that Plaintiff's Eighth Amendment claims against Defendants Hudspeth and Biter be dismissed, with prejudice.

### 4.    Discrimination Claims

Plaintiff alleges violations of the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 1985(3) arising out of CDCR's racially discriminatory hiring policies, which result in racial discrimination and other rights violations against inmates.   As discussed in subsection 1, Plaintiff lacks standing to pursue a claim based on discriminatory hiring practices and his third amended complaint is devoid of any facts which support a claim that he was intentionally treated differently than other similarly situated inmates, based on race or otherwise. *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249 (1985); *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013); *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013); *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008).   Furthermore, Plaintiff alleges no facts which support a claim under section 1985(3) for conspiracy to deprive him of the equal protection of the laws.   *Thornton v. City of St. Helens*, 425 F.3d 1158, 1168 (9th Cir. 2005); *Coverdell v. Dep't. of Soc. and Health Svcs., State of Washington*, 834 F.2d 758, 767 (9th Cir. 1987); *Bretz v. Kelman*, 773 F.2d 1026, 1028-1030 (9th Cir. 1985).

In as much as Plaintiff's second and third amended complaints are substantially similar and neither pleading included facts supporting a the existence of a discrimination claim, the Court recommends Plaintiff's section 1983 and section 1985(3) discrimination claims be dismissed, with prejudice.

///

///

### 5. **Declaratory Relief**

Finally, in addition to damages, Plaintiff seeks a declaration that his rights were violated. However, because Plaintiff's claims for damages necessarily entail a determination whether his rights were violated, his separate request for declaratory relief is subsumed by those claims and the Court recommends it be dismissed. *Rhodes v. Robinson*, 408 F.3d 559, 565-66 n.8 (9th Cir. 2005) (quotation marks omitted).

## III. **Conclusion and Recommendation**

The Court finds that Plaintiff's third amended complaint states cognizable claims for relief against Defendants Hernandez, Mosqueda, and Baker for violation of the First and Eighth Amendments. However, Plaintiff fails to state any other claims for relief and he fails to state any claims against Defendants Hudspeth and Biter.[3] Plaintiff was previously provided with notice of the deficiencies in his claims and further leave to amend is not warranted given the similarity between the factual allegations in his second and third amended complaints. *Akhtar v. Mesa*, 698 F.3d 1202, 1212-13 (9th Cir. 2012); *Lopez v. Smith*, 203 F.3d 1122, 1130-31 (9th Cir. 2000); *Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

Accordingly, based on the foregoing, it is HEREBY RECOMMENDED that:

1. This action for damages proceed on Plaintiff's third amended complaint against Defendants Hernandez, Mosqueda, and Baker for retaliation in violation of the First Amendment and endangering Plaintiff safety in violation of the Eighth Amendment;

2. Plaintiff's claims arising from the allegations set forth in paragraphs 10 through 13 be dismissed, with prejudice, for lack of standing and for failure to state a claim;

3. Plaintiff's retaliation claim arising from the rules violation report issued by Defendant Hernandez, to the extent one is alleged, be dismissed, without prejudice, for failure to state a claim;

---

[3] The theft of Plaintiff's television does not support a claim for relief under section 1983. *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 3204 (1984); *Barnett v. Centoni*, 31 F.3d 813, 816-17 (9th Cir. 1994). It does not appear that Plaintiff is attempting to state such a claim and he was previously advised of the non-viability of the claim. However, to the extent that his complaint can be construed to be raising such a claim, the claim should be dismissed.

4.     Plaintiff's section 1983 equal protection claim and section 1985(3) claim be dismissed, with prejudice, for failure to state a claim

5.     Plaintiff's claims against Defendants Hudspeth and Biter be dismissed, with prejudice, for failure to state a claim; and

6.     Plaintiff's request for declaratory relief be dismissed for failure to state a claim.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).   Within **thirty (30) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court.   The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."   Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, __ F.3d __, __, No. 11-17911, 2014 WL 6435497, at *3 (9th Cir. Nov. 18, 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

   Dated:   **December 17, 2014**                        **/s/ Sheila K. Oberto**
                                                    UNITED STATES MAGISTRATE JUDGE